*Electronically Filed:*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

Civil Action No. 3:08cv-162 M

CLASS ACTION

DOMINIC CAPUANO,
Individually and On Behalf of All Others
Similarly Situated                                                                    PLAINTIFF

vs.

HUMANA, INC.                                                                          DEFENDANTS
    Serve:  CSC-Lawyers Incorporating Service Co.
             421 West Main Street
             Lexington, KY    40601

MICHAEL B. McCALLISTER
    Serve:  Humana, Inc.
            500 West Main Street
            Louisville, KY 40202.

JAMES H. BLOEM
    Serve:  Humana, Inc.
            500 West Main Street
            Louisville, KY 40202

**COMPLAINT FOR VIOLATION
OF THE FEDERAL SECURITIES LAWS**

Plaintiff has alleged the following based upon information and belief and the investigation by Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Humana, Inc. ("Humana" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and

other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.  This is a federal securities class action on behalf of purchasers of the common stock of Humana between February 4, 2008 and March 11, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4.  Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5.  In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Dominic Capuano, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Humana at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant Humana is a Delaware corporation with its principal place of business located at 500 West Main Street, Louisville, KY 40202.  The Company provides various health and supplemental benefit plans for employer groups, government benefit programs, and individuals in the United States.

8.      (a)     Defendant Michael B. McCallister ("McCallister") served, at all relevant times, as the Company's Chief Executive Officer.

(a)     Defendant James H. Bloem ("Bloem") served, at all relevant times, as the Company's Chief Financial Officer.

(b)     Defendants McCallister and Bloem are collectively referred to herein as the "Individual Defendants."

9.      Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements and markets via access to internal corporate documents (including the Company's operating plans, budgets, forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.     It is appropriate to treat the Individual Defendants as a group for pleading purposes

and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of Defendants identified above. Each of the above officers of Humana, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11. As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE") and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management and earnings, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained

of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Humana, each of the Individual Defendants had access to the adverse undisclosed information about Humana's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Humana and its business issued or adopted by the Company materially false and misleading.

13. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14. Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Humana common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Humana's business, operations, management and the intrinsic value of Humana common stock; and (ii) caused Plaintiff and other members of the Class to purchase Humana's common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of Humana between February 4, 2008 and March 11, 2008, inclusive ("the Class") and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

16. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Humana common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Humana or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

18. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

    (a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

    (b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Humana; and

    (c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

20.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21.    Defendant Humana provides various health and supplemental benefit plans for employer groups, government benefit programs, and individuals in the United States.

22.    The Class Period begins on February 4, 2008. On that date, the Company issued a press release announcing its financial results for the fourth quarter of 2007 and raising its earnings estimates for the full year 2008. For the full year 2008, the Company stated that it expected earnings per share ("EPS") in the range of $5.35 to $5.55, while EPS for the first quarter of 2008 was expected to be in the range of $0.80 to $0.85.

23.     On a conference call later that same day, Defendants reiterated the Company's anticipated EPS for 2008. Commenting on the Company's outlook, Defendant McCallister stated, in pertinent part, as follows:

> [T]his morning we raised our 200[8] earnings per share guidance to a range of $5.35 to $5.55, with continued membership growth and strong operational execution driving these results.
>
> ***
>
> We believe the 2007 achievements just described position us well for 2008, both in terms of the existing environment and future trends.

Defendant Bloem also commented on the Company's outlook, stating, in pertinent part, as follows:

> The primary factor driving this less-pronounced pattern is the composition of our 2008 PDP membership, which has changed from last year. We have nearly 300,000 fewer low-income senior members effective January 1, with a higher percentage of non-low-income seniors in our Enhanced plan and a lower percentage of non-low-income senior members in the Complete plan. The decline in the percentage of low-income members is particularly relevant in analyzing the quarterly patterns, because these seniors have a steeper declining slope to their quarterly benefits ratio progression versus the remaining Part D members, with the first quarter ratio much higher on low incomes than the overall average and the fourth quarter much lower. Consequently, our lower membership in the low-income block is anticipated to lower the quarterly benefits ratio pattern in the first half of the year and raise it slightly in

the back half of the year compared to 2007.

*** 

So here is the twofold take away. The composition of our PDP membership will have a significant impact on the quarterly pattern of our Medicare benefits ratio without necessarily impacting the full year ratio. And then secondly, the 2008 quarterly Medicare benefits ratio pattern is expected to drive our quarterly earnings per share for this year.

***

Finally, also as expected, prescription drug trends were in the mid to high single digits. Based on our ongoing deep-dive analysis of benefit expense trend factors, we do not foresee any significant changes to the components of our cost trends as we move into 2008, as is stated in this morning's press release. So accordingly, we remain confident of our ability to meet our 2008 Commercial pretax earnings target of $280 million to $300 million and we look forward to sharing our progress with you each quarter.

24. Following the Company's earnings announcement, Carl McDonald, an equity analyst at Oppenheimer & Co., wrote that "Humana seems well positioned for EPS upside in 2008."

25. On February 12, 2008, Defendant Bloem participated in the UBS Global Healthcare Services Conference in New York, NY and reiterated that the Company expected EPS in the range of $5.35 to $5.55 for the full year 2008.

26. On February 28, 2008, Defendant McCallister participated in the Merrill Lynch Investor Meetings in Toronto, Canada, and reiterated that the Company expected EPS in the range of $5.35 to $5.55 for the full year 2008.

27. The statements referenced above in ¶¶ 22, 23, 25 and 26 were materially false and misleading because Defendants failed to disclose:

(i) that the Company was unable to properly calculate the prescription drug costs of its newly acquired members;

(ii) that the Company's costs associated with its prescription drug plans had dramatically increased; and

(iii) that as a result of the foregoing, Defendants' statements concerning the Company's anticipated EPS for the first quarter of 2008 and full year 2008 were lacking in a reasonable basis at all relevant times and were therefore materially false and misleading.

28. Then, on March 12, 2008, before the market opened for trading, the Company shocked investors by issuing a press release headlined "Humana Revises Earnings Guidance." In the press release, the Company disclosed that it would be revising the financial guidance that it had given to investors just five weeks prior. Specifically, the Company said that its first quarter 2008 EPS were now expected to be in the range of $0.44 to $0.46, versus previous guidance of $0.80 to $0.85 per share. For the full year 2008, the Company now expected EPS to be in the range of $4.00 to $4.25 per share, versus previous guidance of $5.35 to $5.55 per share. The Company attributed these revised earnings to "updated projections for the company's FY08 stand-alone PDP [Prescription Drug Plan] financial performance." The press release further explained that the revised projections are "based upon analysis of pharmacy claims through February 2008. Higher-than-anticipated claims volumes for the stand-alone PDPs year to date are reflective of a combination of

factors including: Enhanced Plan actuarial assumptions versus experience, Enhanced Plan new member experience, and Standard Plan member mix."

29.     Following this announcement, shares of Humana stock declined $6.50 per share to close at $40.88 per share on extraordinarily high trading volume.

30.     In an interview with *Bloomberg*, Sheryl Skolnick, an analyst with CRT Capital Group, was quoted as saying:

> Humana priced their drug plan too low in order to gain market share, and we're seeing the result of that today. They are offering a plan with zero co-pays for a 90-day supply of generics through RightSource, their mail order. And when you tell seniors something is free, they keep coming back again and again.

31.     The market for Humana's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Humana's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Humana common stock relying upon the integrity of the market price of Humana's common stock and market information relating to Humana, and have been damaged thereby.

32.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Humana's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

33.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Humana's business and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Humana and its business and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

### Additional Scienter Allegations

34.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Humana, their control over, and/or receipt and/or modification of Humana's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Humana, participated in the fraudulent scheme alleged herein.

## Applicability of Presumption of Reliance:

## Fraud on the Market Doctrine

35. At all relevant times, the market for Humana's common stock was an efficient market for the following reasons, among others:

    (b) Humana's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

    (c) As a regulated issuer, Humana filed periodic public reports with the SEC and the NYSE;

    (d) Humana regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

    (e) Humana was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

35. As a result of the foregoing, the market for Humana's common stock promptly digested current information regarding Humana from all publicly available sources and reflected such information in Humana's stock price. Under these circumstances, all purchasers of Humana's common stock during the Class Period suffered similar injury through their purchase of Humana's common stock at artificially inflated prices and a presumption of reliance applies.

**No Safe Harbor**

36.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Humana who knew that those statements were false when made.

**Loss Causation/Economic Loss**

37.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated Humana's stock price and operated as a fraud or deceit on Class Period purchasers of Humana stock by misrepresenting the Company's business. During the Class Period, Defendants did not adequately disclose, among other things, the increased costs that it was experiencing with the Company's prescription drug plans. Later, however, when Defendants' prior misrepresentations were disclosed and became apparent to the market, Humana stock fell precipitously as the prior artificial inflation came out of Humana's stock price.  As a result of their purchases of Humana stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, i.e., damages under the federal securities laws.

38.     Defendants' false and misleading statements had their intended effect and caused Humana stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $81.50 per share on the first day of the Class Period.

39.     On March 12, 2008, the Company announced that it would be revising its earnings estimates because of, among other things, increased costs that it was experiencing with the Company's prescription drug plans. Following this announcement, shares of Humana stock fell $6.50 per share, or approximately 13.7%, to close at $40.88 per share.

## COUNT I

### Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

40.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

43.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Humana common stock. Plaintiff and the Class

would not have purchased Humana common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

44. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Humana common stock during the Class Period.

### COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Humana within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Humana, and their ownership of Humana stock, the Individual Defendants had the power and authority to cause Humana to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.

**WHEREFORE,** Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class

members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

      (c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      (d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

STEWART ROELANDT STOESS
CRAIGMYLE & EMERY, PLLC

   S/   JOHN FRITH STEWART

JOHN FRITH STEWART
6506 West Highway 22, P.O. Box 307
Crestwood, Kentucky 40014
Telephone:   502/241-4660
Fax:           502/241-9301
e-mail: stewart@oldhamcountylaw.com

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

LAW OFFICES BERNARD M. GROSS, P.C.
DEBORAH R. GROSS
100 Penn Square East, Suite 450
Juniper and Market Streets
Philadelphia, PA 19107
Telephone: 215/561-3600
215/561-3000 (fax)
Attorneys for Plaintiff